# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 50136 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cummings |
| ANDREW SAUL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant William R. ("Claimant") seeks judicial review of a final decision of Defendant Andrew Saul, the Acting Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for disability insurance benefits ("DIBs") and social security income ("SSI") initially on July 8, 2015 and upon reconsideration on September 22, 2015.[1] On March 1, 2017, however, an Administrative Law Judge ("ALJ") issued a written decision finding that Claimant had been disabled since his alleged onset date of July 1, 2013 through his last insured date of March 31, 2018. (R. 15-34). Claimant sought review by the Appeals Council on April 27, 2017. (R. 172). The Council denied his request on March 8, 2018, making the ALJ's decision the Commissioner's final decision. 20 C.F.R. § 404.981.

Claimant appealed the ALJ's decision to federal court on April 20, 2018 and consented to proceed before this Court for all purposes including final judgment. (Dckt. 12). On April 10, 2019, Claimant filed a motion for summary judgment. (Dckt. 25). The Commissioner filed a

---

[1] The ALJ mistakenly stated that Claimant filed his application on January 7, 2015. (R. 20). The actual date was February 12, 2015. (R. 173). The Commissioner does not challenge the ALJ's mistaken finding even though it is favorable to Claimant. The Court uses the ALJ's identified date for the purpose of this decision in light of the Commissioner's decision not to dispute the ALJ's finding.

1

cross-motion for summary judgment on July 11, 2019. (Dckt. 35). For the reasons addressed below, Claimant's motion is denied and the Commissioner's motion is granted.[2]

## I. BACKGROUND

### A. Evidence From the Hearing

In his disability application, Claimant alleged that he became disabled from mental illness on September 1, 2014. (R. 173). The Disability Determination and Transmittal letter, however, states that the alleged onset date was May 1, 2014, (R. 99), which is the date the ALJ began with at the January 2017 hearing. Claimant confirmed to the ALJ that he had opposed the May 1, 2014 date but that the SSA field officer who assisted him put it on a form during the application process notwithstanding Claimant's objection. (R. 40). As a result, the ALJ spent most of the hearing considering what the actual date should be and what evidence might support the onset determination.

The ALJ first considered January 31, 2014. He noted that Claimant's treating psychiatrist Dr. Corinne Belsky had written a letter stating that she began treating Claimant for schizophrenia on that date. (R. 440). The ALJ also took note of the fact that Claimant had told Dr. Belsky that

---

[2] On April 20, 2018, Claimant filed a motion for attorney representation (Dckt. 4), which the Court denied without prejudice. On May 7, 2019, Claimant filed a renewed motion for attorney representation, (Dckt. 31), which the Court took under advisement. Courts may appoint counsel when circumstances justify such a decision under 28 U.S.C. § 1915(e)(1). To determine if appointment is necessary, a court must decide (1) whether the claimant has made reasonable efforts to obtain counsel, (2) if the claimant is able to try the case in light of its difficulty, and (3) "if not, would the presence of counsel have made a difference in the outcome." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (internal quotes and citation omitted). Claimant has met the first two prongs of this test. In particular, Claimant made adequate attempts to retain counsel by approaching five legal organizations for representation and Claimant's inability to file a proper motion for summary judgment suggests that his mental impairment could interfere with his ability to prosecute this case. Claimant, however, has failed to meet the third element of the test. As shown below, *infra* at Section III(A) and III(B), Claimant's allegation that he is entitled to greater benefits fails as a matter of law. Even if Claimant's onset date were May 17, 2010 instead of July 1, 2013, the ALJ's decision provides Claimant with all of the benefits he is entitled to under the regulations. Consequently, representation by counsel would not have affected the outcome here. Claimant's motion is therefore denied.

2

he experienced auditory hallucinations as early as 1991. (R. 440). Claimant asked the ALJ to revise the onset date to January 1, 1991 based on Dr. Belsky's comment but the ALJ refused because Claimant had engaged in substantial gainful activity through 2009. (R. 42-49). The vocational expert ("VE") then alerted the ALJ to an earlier treatment record; notes from the Veterans' Administration ("VA") showed that Claimant began treatment at the Cpt. James Lovell Federal Health Center as early as December 7, 2013. (R. 49). The ALJ agreed that "based on that, I can move [the onset date] back to December 7, 2013." (R. 49-50).

Claimant then told the ALJ that it was "possible" that he had been treated for mental illness earlier than December 7, 2013, and he and the ALJ engaged in a lengthy – and frequently unclear – discussion on that topic.[3] (R. 57). They addressed three issues. First, the ALJ told Claimant that the SSA's regulations only permitted him to receive benefits for the 12-month period prior to his January 7, 2015 disability application. The ALJ then asked Claimant if he had ever filed a prior application. Claimant stated that he had but the ALJ told him that "it doesn't do you a whole lot of good" because of the 12-month limit on benefits. (R. 43-44). For reasons that are unclear, the ALJ then asked Claimant once again if he had filed an earlier disability application and stated that he "might reopen that" proceeding if it existed. (R. 48). Contrary to his earlier remark, the ALJ suggested that such an application might still be beneficial to Claimant. (R. 48). Despite the fact that Claimant had already told the ALJ he *had* filed a prior application, the ALJ concluded that he "got the impression you're saying no, you didn't" file one. (R. 48). As discussed below, *infra* at Sections III(B) and III(C), Plaintiff filed for disability benefits in 2011 as well as in 2015.

---

[3] Like the Court, both the ALJ and Claimant found their interchange difficult to follow. The ALJ characterized it as confusing. (R. 58, "You – we're getting more and more confused"). Claimant termed it a "miscommunication" due to his mental impairment. (R. 63).

3

Second, Claimant eventually clarified for the ALJ that he had been treated for mental illness at a VA facility in Fayetteville, North Carolina as early as 2000 or possibly in 2002 or 2003. (R. 54, 61). The ALJ offered to request records from the North Carolina VA facility and raised Claimant's hopes that an earlier onset date might be established. (R. 68, "It sounds like you're entitled to a date a little bit earlier than what . . . you got"). Third, the ALJ then asked Claimant to sign a release form that would allow him to request the North Carolina records. The ALJ placed great emphasis on this issue and warned Claimant multiple times that he would not be able to take action unless Claimant did so. (R. 77, "But I need to have you sign that. If you don't, I'm not going to be able to do anything"). Claimant refused to sign the form, however, and consented to the December 7, 2013 onset date. (R. 77). In his decision, the ALJ attributed Claimant's reluctance to his mental illness by stating that his "paranoia was such that he refused to sign the form granting permission for the records to be released." (R. 19).

**B.     The ALJ's Decision**

Applying the five-step sequential analysis that governs disability evaluations, the ALJ found at Step 1 that Claimant had not engaged in substantial gainful activity since his onset date.[4] Contrary to everything that was discussed at the hearing, the ALJ found the onset date to be July 1, 2013 instead of December 7, 2013. (R. 17). The ALJ claimed that he changed the onset date

---

[4] The Social Security Administration ("SSA") applies a five-step analysis to disability claims. The SSA first considers whether: (1) the claimant has engaged in substantial gainful activity during the claimed period of disability; (2) the claimant's physical or mental impairment is severe; (3) the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"); (4) the claimant is able to engage in any of his or her past relevant work; and if he or she cannot, (5) whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The ALJ's analysis of these factors is not dispositive here because the ALJ resolved the "disability" issue in Claimant's favor by determining that he is disabled.

based on medical evidence "discussed below" in the decision. (R. 15). In reality, however, the ALJ did not cite anything in the record that related to the July 1, 2013 date.

Claimant's severe impairments at Step 2 included bipolar disorder with psychosis and schizophrenia. (R. 17). At Step 3, the ALJ considered whether Claimant's symptoms met or medically equaled the criteria of listing 12.03 (schizophrenic, paranoid and other psychotic disorders). Listing 12.03 requires a claimant to show either that (1) he or she meets the Paragraph C factors set out in the listing,[5] or (2) meets both the Paragraph A and Paragraph B factors. Paragraph A of listing 12.03 requires a documented history of schizophrenia that is accompanied by a history of hallucinations, catatonia, incoherence, or isolation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03(A)(1)-(4). The ALJ found that Claimant met this criterion because he had a medically-documented history of delusions, hallucinations, and disorganized speech and thought. (R. 18).

A claimant meets the criteria of Paragraph B when he or she has marked limitations in the functional areas of (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P., App. 1 at § 12.03(B). The ALJ found that Claimant met this listing because he had marked restrictions in all of these categories. The ALJ therefore determined that Claimant was disabled without moving to Step 4 or Step 5 of the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(iii).

---

[5] Paragraph C requires a documented history of schizophrenia for at least two years plus a showing of (1) repeated episodes of decompensation, (2) such a marginal adjustment that decompensation could result from increased mental demands, or (3) a marginal adjustment that could lead to decompensation based on increased environmental demands. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03(C).

5

### C. The Review Process

On April 27, 2017, Claimant sought review by the Appeals Council of the ALJ's onset date. (R. 172). In support, Claimant submitted a one-page document from the Lake County, Illinois Health Department that had not been provided to the ALJ. The document lists a series of appointments from May 17, 2010 through July 21, 2011 with Beth Fraum M.D., Rihan Morcott M.D., and several other individuals. (R. 10). The Appeals Council denied review and declined to consider the evidence because it did "not show a reasonable probability that it would change the outcome of the decision." (R. 2).

Claimant brought this action on April 20, 2018 and alleged in his *pro se* complaint that the correct onset date for disability was May 17, 2010. (Dckt. 1). Instead of a filing a motion for summary judgment with supporting arguments, however, Claimant re-submitted what he characterized as "the complete full set of documented evidence in [his] case." (Dckt. 15 at p. 5). The Court struck Claimant's filing as unresponsive; directed him to file a brief that addressed the issues more carefully; and held a hearing on May 14, 2019 so that Claimant could clarify the basis of his claim. A second hearing was held on June 13, 2019 at which both Claimant and the Commissioner's counsel appeared. The Court directed the Commissioner to file a motion for summary judgment by July 12, 2019 and for Claimant to respond to it by August 12, 2019. (Dckt. 34). The Commissioner filed a motion on July 11, 2019 but Claimant did not respond.

## II. LEGAL STANDARD

This case involves two interrelated issues: (1) the determination of a claimant's onset date and (2) the relationship between disability benefits and the date of the claimant's disability application. The onset date is critical when a claimant is found to be disabled because "it may affect the period for which the individual can be paid and may even be determinative of whether

the individual is entitled to or eligible for any benefits." SSR 83-20, 1983 WL 31249, at *1 (1983)[6]; *see also Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987) (noting that "the critical date is the *onset* of disability, *not* the date of diagnosis") (internal quotes and citation omitted) (emphasis in original).

An ALJ establishes the onset date for disabilities of a non-traumatic origin by considering (1) the applicant's alleged onset date, (2) his or her work history, and (3) the relevant medical evidence. *Id*; *see also Rohan v. Barnhart*, 306 F.Supp.2d 756, 796 (N.D.Ill. 2004). Medical evidence constitutes "the primary element in the onset determination" but an ALJ may ask a medical expert to assist him or her in assessing the appropriate date. SSR 83-20, 1983 WL 31249, at *2; *see also Lewis v. Astrue*, 518 F.Supp.2d 1031, 1040 (N.D.Ill. 2007). In cases where the correct date is difficult to establish "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." SSR 83-20, 1983 WL 31249, at *3.

Like the onset date, the date on which a claimant files his or her application can affect the benefits that a disabled claimant is owed. The requisite filing date depends on whether a claimant is seeking DIBs or SSI. The regulations state that a claimant who asks for DIBs "must file an application for a period of disability while you are disabled or no later than 12 months after the month in which your period of disability ended." 20 C.F.R. § 404.621(d). If a physical or mental condition prevents the claimant from applying within 12 months of onset, the claimant may apply for DIBs "not more than 36 months after your disability ended." *Id*. A claimant who is entitled to DIBs – and who files an application *after* the first month of the onset of disability –

---

[6] Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). They do not have the force of law or a regulation, though they are binding on the SSA. *Id*.

may only receive DIBs "for up to 12 months immediately before the month in which your application is filed." 20 C.F.R. § 404.621(a)(1).

The eligibility for SSI is more restrictive. A claimant who files an application after the first month of disability is not entitled to any SSI payments that predate the application date. 20 C.F.R. § 416.335 (stating that "we cannot pay you for the month in which your application is filed or any months before that month").

## III. DISCUSSION

As the Court's review of the January 2017 hearing testimony suggests, significant confusion surrounds the ALJ's determination of Claimant's onset date. Claimant identified May 1, 2014 at some point in his application process but later repudiated that date at the hearing. The ALJ claimed at the hearing that January 31, 2014 was the correct date based on Dr. Belsky's letter; changed it to December 7, 2013 when the VE pointed to evidence that the ALJ initially overlooked; and changed it once again to July 1, 2013 in the decision without citing any evidence to explain that finding. Claimant agreed to the December 7, 2013 date at the hearing but now argues that his onset date was May 17, 2010. The Commissioner claims that even if May 17, 2010 were the correct onset date the issue is irrelevant because Claimant has already received all of the disability benefits he is entitled to based on his January 7, 2015 application date.

The Court agrees with that argument for the reasons discussed below, *infra* at Section III(B). Although that is sufficient to decide both parties' motions, the Court also addresses the merits of Claimant's allegations about his onset date. Claimant was confused at the status hearings before the Court about what the ALJ had decided and what he stated at the hearing. Even though Claimant has not submitted a motion that contains supporting arguments, the Court

recognizes that his mental impairment and *pro se* status may have interfered with his ability to do so. The ALJ noted, for example, that Claimant's schizophrenia created marked limitations in his ability to understand, remember, and apply information. That included "disorganized thinking," tangential thought processes," and "paranoid beliefs." (R. 18). Court therefore addresses the merits of Claimant's onset issue in order to prevent any additional confusion on the topic.

Part of the lack of clarity that arose at the hearing related to the ALJ's failure to understand whether Claimant had filed an earlier disability application and the ALJ's comment that he might reopen any earlier proceeding that took place. Taking up that topic, the Commissioner also argues that Claimant would not be able to reopen his earlier 2011 disability application even if he attempted to do so. The Court does not need to discuss that issue in order to decide Claimant's motion. It does so, however, because Claimant has received a copy of the Commissioner's motion and failing to discuss the Commissioner's claim could lead to further confusion for Claimant that can be avoided by addressing the issue.

### A. The Evidence Does Not Support an Earlier Onset Date

As SSR 83-20 states, a claimant's onset date is determined by considering (1) the alleged onset date, (2) the claimant's work history, and (3) the medical evidence. 1983 WL 31249, at *2. In this case, Claimant's alleged onset date of May 1, 2014 is irrelevant for deciding the correct date on two grounds. First, Claimant explained that it was inserted in an application form by an SSA field officer over his objection. Second, the ALJ's date of July 1, 2013 is earlier than Claimant's alleged date. That renders the date of May 1, 2014 moot for this purpose because the ALJ's date was more favorable to Claimant than the date he originally claimed.

The second factor concerning work history supports Claimant's position to some degree. The ALJ did not question Claimant about his work history but he noted that Claimant had

"substantial" income through 2009. (R. 43). The record confirms that Claimant experienced a sharp drop in earnings after that period. He earned $11,442 in 2009; by 2010, however, his income declined to $343. (R. 198). $5,740 was earned in 2011; $1,509 in 2012; and $7,704 in 2013. Claimant had no earned income for 2015 or 2016. (R. 198). These figures suggest – though they do not prove – that Claimant's ability to work declined starting in 2010. Since the ALJ failed to inquire into this issue, however, the evidence does not show what Claimant did during these years or why his income dropped after 2009.

That said, the "primary element in the onset determination" is the third factor concerning medical evidence. SSR 83-20, 1983 WL 31249, at *2; *see also Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999) ("Medical evidence is the most important factor, and the chosen onset date must be consistent with it."). The record that was before the ALJ did not contain any evidence related to Claimant's treatment for mental illness in 2010, 2011, or 2012. As discussed earlier, *supra* at Section I(A), Claimant told the ALJ that he had been treated for mental illness in North Carolina at some time between 2000 and 2003. A claimant's testimony, however, is insufficient to demonstrate the onset of a disability without supporting evidence. "To be significant, the claimant's allegations [about the onset date] . . . must be consistent with the severity of the condition shown by the medical evidence." *Rohan*, 306 F.Supp.2d at 767. The ALJ attempted – repeatedly – to develop the record concerning Claimant's earlier treatment history by encouraging him sign a HIPAA release that would allow the ALJ to obtain the North Carolina records. Indeed, the ALJ was at times insistent that Claimant do so. (R. 74, "But what I am telling you is that you sign that form"). Claimant's refusal to sign meant that his treatment records prior to 2013 were not available to the ALJ as a guide to the correct onset date.

The only other possible evidentiary source for Claimant's allegation is the Lake County Health Department form that he submitted to the Appeals Council. Claimant states that this appointment log "shows proof that without a doubt [the onset date] should be changed to May 17, 2010." (Dckt. 1 at p. 1). The one-page form cites 17 appointments that Claimant made with Dr. Rhian Morcott, Dr. Beth Fraum, and various non-medical individuals. (R. 10). The first of these appointments was made on May 17, 2010. The form shows that Claimant cancelled three of these appointments, did not show up for six of them, and attended only eight appointments. (R. 10). The Appeals Council declined to review Claimant's case because the Lake County appointment record "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (R. 2). The Council specifically stated that it did not consider the evidence that Claimant submitted. (R. 2, "We did not consider and exhibit this evidence").

Unfortunately for Claimant, the fact that he submitted the Lake County document for the first time to the Appeals Council instead of to the ALJ prevents the Court from considering it at this stage of his case. A claimant is required to submit *all* of his or her relevant evidence to the ALJ for consideration. Serious consequences can ensue when a disability applicant fails to do so because the Appeals Council does not automatically consider newly-proffered evidence. When a claimant seeks review by the Appeals Council based on evidence that was not given to the ALJ, the Council will only grant review "if the claimant submits 'new and material evidence' that, in addition to the evidence already considered by the ALJ, makes the ALJ's decision 'contrary to the weight of the evidence' in the record." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.970(b)); *see also Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015) (noting that evidence must be "new and material" and relate "to the period on or before the date of the [ALJ's] decision") (also citing 20 C.F.R. § 404.970(b)). A reviewing court has jurisdiction to

11

consider the Appeals Council's determination that a claimant's evidence does not meet this standard. *Stepp*, 795 F.3d at 721; *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012); *Mimms v. Colvin*, No. 13-cv-894, 2014 WL 3900233, at *2 (S.D.Ind. Aug. 11, 2014) ("A district court may review *de novo* whether the Appeals Council made an error of law in applying this regulation."). If the Appeals Council correctly found that the evidence is not "new and material," a reviewing court in this Circuit may not consider it. *Farrell*, 692 F.3d at 770.

The terms "new" and "material" are carefully defined in the context of a request for review by the Appeals Council. Evidence is material if "there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). The fact that the Appeals Council cited this language as its reason for not considering Claimant's evidence means that the Council did not find it to be material. The Court agrees that Claimant's evidence fails to show why the ALJ would have reached a different decision if it had been available to him. The Lake County log does not identify who Dr. Fraum, Dr. Morcott, or the non-medical individuals are or what their area of specialization was. The form also fails to indicate anything about what kind of treatment Claimant sought from these individuals. The log hints at events such as "intake," therapy," and "individual 15 min," but these cryptic entries do not shed any light on the nature of Claimant's complaint or the "therapy" that he received.

Moreover, the fact that the Lake County log was submitted to the Appeals Council for the first time does not make it "new." Evidence is "new" in this context only if it was "not in existence or available to the claimant at the time of the administrative hearing." *Perkins*, 107 F.3d at 1296. The appointment log was clearly available to Claimant at the time of the January 2017 administrative hearing. Indeed, it was available to him far earlier because the log is

12

accompanied by an Authorization of Release form that Claimant signed for the Lake County Health Department on June 2, 2010 – over six years before the hearing. (R. 11). Since Claimant requested the log at that point – and presumably took possession of it – the log was obviously in existence at the hearing and could have been submitted to the ALJ.

Since the Appeals Council denied review and did not err in rejecting Claimant's newly-proffered evidence, this Court may not consider it as part of Claimant's motion. *Farrell*, 692 F.3d at 770; *Jirau v. Astrue*, 715 F.Supp.2d 814, 825 (N.D.Ill. 2010) (stating that "when the Appeals Council has simply denied review, the district court is limited to the evidence considered in the ALJ's original opinion in determining reversible error"). Accordingly, no reviewable evidence exists to support Claimant's allegation that the ALJ should have found his onset date to be May 17, 2010.

**B.      An Earlier Onset Date Would Not Entitle Claimant to Greater Benefits**

The Commissioner argues that even if May 17, 2010 were the correct onset date, the ALJ's failure to identify that date constitutes harmless error because Claimant has already received all of the benefits he is entitled to in this case. *See Lambert v. Berryhill,* 896 F.3d 768, 776 ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand"). A disabled claimant who files an application more than one month after his onset date can only receive DIBs for the 12-months prior to his application date. 20 C.F.R. § 404.621(a)(1). The ALJ found that Claimant submitted his disability application on January 7, 2015. That was more than 29 months after the onset date of July 1, 2013. Claimant was therefore only eligible for DIBs for the 12-month period before his January 7, 2015 application date – whether or not his onset date should have been May 17, 2010. Consequently, even if this Court were to find

that the onset date should have been earlier than the ALJ's date of July 1, 2013, Claimant would not be entitled to an award of additional DIBs.

Moreover, Claimant was not eligible for *any* SSI benefits prior to January 7, 2015. A claimant who files for SSI after the first month of a disability onset cannot receive any SSI payments prior to the application date. 20 C.F.R. § 416.335; *see also Blackstock v. Astrue*, 527 F.Supp.2d 604, 609 (S.D.Tex. 2007) ("A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which she applies for benefits, no matter how long she has actually been disabled."). The Court therefore agrees with the Commissioner that Claimant has received all of the disability benefits that he was entitled to pursuant to his January 7, 2015 application for both DIBs and SSI.

### C. Claimant's Earlier Disability Proceeding Cannot Be Reopened

As noted earlier, *supra* at Section I(A), Claimant twice told the ALJ that he had filed another disability application prior to his January 7, 2015 application. The ALJ misconstrued Claimant's testimony to mean that he had *not* filed an earlier application but stated that the ALJ might reopen an earlier proceeding if it existed and that a prior application "might affect" Claimant's entitlement to benefits. (R. 48). The Commissioner undertook a review of Claimant's files after the June 13, 2019 hearing and reports that Claimant previously filed for DIBs and SSI benefits on April 12, 2011. The application alleges that Claimant became disabled on February 1, 2010. The SSA denied the application on August 9, 2011 on an initial review and Claimant did not seek review of that finding. In an attempt to clarify the consequences of the ALJ's comments, the Commissioner argues that Claimant would not be able to reopen the 2011 proceeding even if he asked the SSA to do so.

The Commissioner is correct. The regulations provide that when a disability claimant has not sought administrative review of an unfavorable decision, the SSA's determination may be reopened at either the claimant's or the SSA's initiative under a limited set of circumstances. 20 C.F.R. § 404.987; *see also Bolden ex rel. Bolden v. Bowen*, 868 F.2d 916, 917-18 (7th Cir. 1989); *McLachalan v. Astrue*, 703 F.Supp.2d 791, 795 (N.D.Ill. 2010). The regulations set out three possibilities for reopening a decision based on the time that has elapsed between the SSA's disability determination and the request to reopen. First, a case may be reopened "for any reason" within 12 months "of the date of the notice of the initial determination." 20 C.F.R. § 404.988(a). Second, "good cause" – as defined by 20 C.F.R. § 404.989 – supports the reopening of a case within four years of the notice of the initial determination. 20 C.F.R. § 404.988(b). Third, a decision may also be reopened "at any time" if one of 11 conditions is met including provisions such as the decision was obtained by fraud, the Railroad Retirement Board granted duplicate benefits, or an award of benefits was based on the mistaken assumption that a person crucial to the SSA's decision was dead. 20 C.F.R. § 404.988(c).

The Commissioner has not submitted any of the documents related to Claimant's 2011 application. Assuming the Commissioner's representations are accurate, however, the Court agrees that Claimant cannot reopen the 2011 proceeding.[7] As the Commissioner states, Claimant's failure to seek review of the denial of his application made the SSA's initial finding the Commissioner's final decision. *See* 20 C.F.R. § 404.905. The three possibilities for reopening a proceeding set out in the regulations – "any reason," "good cause," and "at any time" – therefore do not apply. The first two options are barred by the time that has elapsed since the

---

[7] Claimant, who did not respond to the Commissioner's motion, does not dispute the Commissioner's description of what occurred with respect to his 2011 application.

15

denial of Claimant's application: an "any reason" request must be brought within 12 months of notice of the denial; a "good cause" request must be filed within four years of the notice. 20 C.F.R. § 404.988(a)-(b). The Commissioner does not state when Claimant was notified of the SSA's decision but the denial of his claim was over eight years ago on August 9, 2011.

The "at any time" provision of 20 C.F.R. § 404.988(c) also fails to apply because the record does not suggest that any of the 11 conditions listed in that regulation apply to these facts. Claimant did not receive duplicate benefits from the Railroad Retirement Board; there is no evidence that Claimant was convicted of crime that affected his right to benefits, and nothing suggests that his application was denied because he failed to prove that a person whom he claimed was dead turned out to be alive. 20 C.F.R. § 404.988(c). Consequently, Claimant would not be able to reopen the 2011 proceeding even if he had sought leave to do so during the course of his appeal before this Court.[8]

---

[8] The Commissioner also argues that Claimant would not be able to obtain a review of the 2011 denial of his application if he sought one. A claimant has 60 days within which to request such a review; however, that period can be extended "if the claimant can show good cause for missing the deadline." SSR 91-5p, 1991 WL 208067, at *1 (1991). Mental illness can constitute good cause. 20 C.F.R. § 404.909(a). The Commissioner claims that, because Claimant was able to ask for a review of the denial of his 2015 application, he could have requested one for the 2011 denial. The Court does not address this issue. The Court has no evidence of Claimant's mental condition in 2011 or at the time he sought review of the 2015 denial. In addition, it for the SSA to make an initial decision concerning good cause – and only then after a claimant makes a written request and provides specific reasons why he or she could not sought review in a timely manner. SSR 91-5p, 1991 WL 208067, at *1.

## IV. CONCLUSION

For these reasons, Claimant's motion for summary judgment [25] is denied. The Commissioner's motion for summary judgment [35] is granted. Claimant's motion for attorney representation [31] is denied as moot.

	**Hon. Jeffrey Cummings**
	**United States Magistrate Judge**

**Dated:  December 20, 2019**